```
             UNITED STATES DISTRICT COURT
               DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA      :
                              :
     v.                       :  Crim. No. 3:19CR111(AWT)
                              :
ROLANDO RUSSELL               :
```

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

For the reasons set forth below, the defendant's Emergency Motion for Compassionate Release Under the First Step Act (ECF Nos. 35 and 37) is hereby DENIED.

Defendant Rolando Russell moves, pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i), for an order reducing his sentence to time served. Russell contends that his "medical condition, including a body mass index in excess of thirty (30), breathing related disorder and other medical issue[s] regarding a plethora of prescription medication, in combination with the Covid-19 pandemic, place him at grave risk of serious illness and death." Compassionate Release Motion (ECF No. 37) at 1. The defendant is currently incarcerated at FCI Petersburg, and he highlights the large number of COVID-19 cases at that facility.

On April 26, 2019, the defendant plead guilty to two counts of an information, each which charged him with filing a false

tax return in violation of 26 U.S.C. § 7206(2).  The Stipulation of Offense Conduct and Relevant Conduct included the following:

> During the relevant period, including tax years 2013 through 2016, RUSSELL assisted in the preparation of approximately 1,820 tax returns for clients, claiming on those returns approximately $11.26 million in refunds, of which the IRS issued approximately $10 million.  Many of the filed tax returns included false forms Schedule C with losses attributed to Schedule Cs of approximately $22.2 million.  Those losses resulted in the corresponding reduction of taxes owed of as much as $6.2 million.

Plea Agreement (ECF No. 5) at 10 of 11.  The parties agreed that the applicable Guidelines loss was $1.501 million; they based the loss figure "on tax losses identified by reviewing 25 returns of a limited, but typical, number of the defendant's clients (9) for tax years 2013 through 2016 and identifying losses totaling $137,476 on those clients' tax returns for the identified tax years . . . ."  Id. at 5 of 11.  The government's response to the instant motion accurately recites that

> [a] review of the filed returns reflected a defendant willing to falsify information on scores of returns over a multi-year period. The defendant thus victimized the IRS and also put each client at risk for audit and subsequent repayment of refunds, interest and penalties. And Russell's conduct did not just result in understated payments to the IRS from taxpayers (that is, the IRS collecting less money), but actually resulted in the IRS affirmatively *paying out* monies to taxpayers not entitled to such funds in the form of refund checks. In short, the defendant's conduct was long standing and a significant fraud.

Gov't Mem. (ECF No. 40) at 3 of 13.

The Presentence Report determined that the defendant's total offense level was 21 and his criminal history category was

2

VI, even though the parties had agreed upon a criminal history category of V.  Thus the Presentence Report stated that the Guidelines included 77 months to 96 months of imprisonment.  At sentencing, the parties proposed and the court made a <u>Fernandez</u> departure to give effect to the parties' plea agreement.  The Guidelines for a total offense level of 21 and a criminal history category of V included a range of 70 to 87 months of imprisonment.  The government supported the defendant's request for a sentence below that Guidelines range because he had assisted in identifying the scope of his false IRS filings.  Consequently, the court imposed a sentence that included 36 months of imprisonment, which was significantly below the advisory range under the Guidelines, even after giving effect to the <u>Fernandez</u> departure.

Section 3582(c)(1)(A) of Title 18 of the United States Code, which governs compassionate release, requires as an initial matter that:

> the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c)(1)(A).  Assuming a defendant has exhausted administrative remedies, a court may reduce a term of imprisonment under Section 3582(c)(1)(A)(i) if, after considering the factors set forth in 18 U.S.C. § 3553(a) to the

3

extent they are applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission".  18 U.S.C. § 3582(c)(1)(A)(i).  The policy statement in U.S.S.G. § 1B1.13 is applicable to compassionate release.

Here it is undisputed that the defendant has satisfied the requirement with respect to exhaustion of administrative remedies.

People with certain medical conditions are or may be at increased risk of severe illness if they contract COVID-19.  The Centers for Disease Control and Prevention advises:

> Adults of any age with the following conditions **are at increased risk** of severe illness from the virus that causes COVID-19:
>
> - Cancer
> - Chronic kidney disease
> - COPD (chronic obstructive pulmonary disease)
> - Down Syndrome
> - Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
> - Immunocompromised state (weakened immune system) from solid organ transplant
> - Obesity (body mass index [BMI] of 30 kg/m² or higher but < 40 kg/m²)
> - Severe Obesity (BMI ≥ 40 kg/m²)
> - Pregnancy
> - Sickle cell disease
> - Smoking
> - Type 2 diabetes mellitus
>
>     . . . .

> Based on what we know at this time, adults of any age with the following conditions **might be at an increased risk** for severe illness from the virus that causes COVID-19:
>
> - Asthma (moderate-to-severe)
> - Cerebrovascular disease (affects blood vessels and blood supply to the brain)
> - Cystic fibrosis
> - Hypertension or high blood pressure
> - Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
> - Neurologic conditions, such as dementia
> - Liver disease
> - Overweight (BMI > 25 kg/m$^2$, but < 30 kg/m$^2$)
> - Pulmonary fibrosis (having damaged or scarred lung tissues)
> - Thalassemia (a type of blood disorder)
> - Type 1 diabetes mellitus

Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 27, 2021)(emphasis in original).

The defendant has a body mass index in excess of thirty (30), which places him at increased risk of severe illness from COVID-19. His medical records for the period from May 2014 through October 2019 consistently reflect a BMI in excess of 30. The Presentence Report also reflects such a BMI.

A doctor's note dated October 7, 2019 states, under "Assessment and Plan": "Chronic obstructive pulmonary disease, unspecified COPD type (HC Code) Not well controlled demonstrated by frequent exacerbations". Compassionate Release Mem., Ex. 38-

5

1, at 16 of 60.  The medical records also reflect that the defendant has been a smoker for decades and has at times used an inhaler.  Both COPD and a history of smoking are recognized by the CDC as increasing the risk of severe complications if an individual contracts COVID-19, although the court agrees with the government that the medical records are unclear as to what extent the defendant is affected by COPD.  The medical records do not reflect significant medical issues caused by either COPD or the defendant's history of smoking, and the Presentence Report makes no mention of the defendant suffering from COPD or taking any medication related to such a condition.  But the court assumes for purposes of the instant motion that COPD and the defendant's history of smoking do increase the defendant's risk of severe complications if he were to contract COVID-19.

   The court concludes, however, that in this case the applicable Section 3553 factors counsel against reduction of the defendant's sentence, and in addition, a reduction of the defendant's sentence would not be consistent with U.S.S.G. 1B1.13 because the court cannot find that the defendant is not a danger to the community.

   As to danger to the community, the Presentence Report reflects that the defendant's total criminal history score was 21.  The Presentence Report discusses 36 prior criminal convictions.  Approximately eight of those prior convictions

6

were for failure to appear, but approximately eighteen of the defendant's prior convictions were for offenses such as larceny, forgery, burglary, theft of ID and/or credit card fraud.  None of the defendant's prior convictions was for a tax offense.  However, the court expressed a concern at sentencing about the need for specific deterrence in this case because the defendant's tax offense was simply another way of illegally obtaining financial gain at the expense of a victim.  In addition, the defendant's multi-year false tax returns scheme was carried out by means of repeated instances of fraud.  Moreover, while statistics show that the recidivism rate for people over the age of 60 at the time of release is 16.4 percent,[1] the defendant's extensive criminal record and the repeated instances of fraud perpetrated by him during the offense of conviction led the court to conclude that the defendant is in the small group of people in his age group who are likely to reoffend.  Nothing the defendant presented at sentencing and nothing since then has given the court a basis for concluding otherwise.  So the court can not conclude that the defendant is not a danger to the community.

In addition, although the defendant's offense conduct (which included a stipulation as to loss amount) and his

---

[1] The Effects of Aging on Recidivism Among Federal Offenders 22-23 (U.S.S.C. Dec. 2017) found at https://www.ussc.gov/topic/reports-glance#0.

criminal history resulted in an advisory Guidelines range that included a term of imprisonment in the range of 77 months to 96 months (revised downward to 72 months because of the three-year statutory maximum for his two offenses of conviction), the court imposed a sentence of 36 months of imprisonment.  Given the need, as noted at sentencing, for just punishment and general deterrence, and the court's concern about the need for specific deterrence, the court did not view a sentence of less than 36 months of imprisonment as being sufficient to serve the purposes of sentencing.  Nothing presented by the defendant in support of the instant motion leads the court to conclude otherwise now.

It is so ordered.

Signed this 27th day of January 2021 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
